# 21-1234

## *United States Court of Appeals*

### FOR THE SECOND CIRCUIT

———————————

ANNE DE LACOUR, ANDREA WRIGHT, and LOREE MORAN,
individually and on behalf of all others similarly situated,
*Plaintiffs-Respondents*,

- v. -

COLGATE-PALMOLIVE CO. and TOM'S OF MAINE INC.,
*Defendants-Petitioners*.

———————————

ON PETITION FOR PERMISSION TO APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE SOUTHERN DISTRICT OF NEW YORK
(WOOD, U.S.D.J.; CASE NO. 1:16-CV-08364-KMW)

———————————

### PLAINTIFFS-RESPONDENTS' OPPOSITION TO DEFENDANTS-PETITIONERS' PETITION FOR PERMISSION TO APPEAL UNDER FED. R. CIV. P. 23(f)

———————————

Frederick J. Klorczyk III
**BURSOR & FISHER, P.A.**
888 Seventh Avenue
New York, NY 10019
Telephone: (646) 837-7150
Facsimile:  (212) 989-9163

*Attorneys for Plaintiffs-Respondents*

# TABLE OF CONTENTS

PAGE

INTRODUCTION ................................................................. 1

ARGUMENT ..................................................................... 3

I.    EVEN IF DEFENDANTS ARE CORRECT ABOUT THE *GAY* SETTLEMENT'S PRECLUSIVE EFFECT, IT WOULD NOT DISPOSE OF THE DISTRICT COURT'S CLASS CERTIFICATION ORDER ........................................... 3

II.   THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE *GAY* SETTLEMENT BECAUSE THEY ARE NOT BASED ON THE IDENTICAL FACTUAL PREDICATE AT ISSUE IN *GAY* .................................................................. 5

    A.   Plaintiffs' Claims Are Based On Different Product Packaging Than The Packaging At Issue In The *Gay* Settlement ....................................................... 8

    B.   Plaintiffs' Claims Are Based On Entirely Separate Transactions That Took Place During A Time Period Not Covered By The *Gay* Settlement ..................................... 10

III.  THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS HAVE STANDING TO ASSERT CLAIMS RELATED TO DEFENDANTS' "NATURAL" DEODORANTS AND TOOTHPASTES BECAUSE THEY ARE SUFFICIENTLY SIMILAR ................................................................. 14

CONCLUSION .................................................................. 22

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT ................. 24

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Brady v. Basic Research, LLC*,
  101 F. Supp. 3d 217 (E.D.N.Y. 2015) ................................................. 21

*Buonasera v. Honest Co.*,
  208 F. Supp. 3d 555 (S.D.N.Y. 2016) ................................................. 21

*Consol. Edison, Inc. v. Ne. Utils.*,
  332 F. Supp. 2d 639 (S.D.N.Y. 2004) ................................................. 13

*Daniel v. Tootsie Roll Indus., LLC*,
  2018 WL 3650015 (S.D.N.Y. Aug. 1, 2018) ....................................... 21

*DiMuro v. Clinique Laboratories, LLC*,
  572 Fed. Appx. 27 (2d Cir. 2014) ................................................. 15, 19

*Hart v. BHH, LLC*,
  2016 WL 2642228 (S.D.N.Y. May 5, 2016) ........................................ 21

*Hesse v. Sprint Corp.*,
  598 F.3d 581 (9th Cir. 2010) .................................................... 5, 9, 10

*Hevesi v. Citigroup Inc.*,
  366 F.3d 70 (2d Cir. 2004) ............................................................... 4

*Holve v. McCormick & Company, Inc.*,
  334 F. Supp. 3d 535 (W.D.N.Y. 2018) ......................................... 17, 20

*In re Credit Default Swaps Antitrust Litig.*,
  13-MD-2476 2016 WL 2731524 (S.D.N.Y. Apr. 26, 2016) .................. 8

*In re Digital Music Antitrust Litig.*,
  812 F. Supp. 2d 390 (S.D.N.Y. 2011) ............................................ 7, 11

*In re Lehman Bros. Sec. & ERISA Litig.*,
  2012 WL 2478483 (S.D.N.Y. Jun. 29, 2012) ................................. 7, 13

ii

*In re Literary Works In Electronic Databases Copyright Litig.*,
654 F.3d 242 (2d Cir. 2011)....................................................5, 6, 8

*In re Sumitomo Copper Litig.*,
262 F.3d 134 (2d Cir. 2001)...................................................1, 14, 22

*In re Western States Wholesale Natural Gas Antitrust Litig.*,
725 F. App'x 560 (9th Cir. 2018) ........................................10

*Marcus v. BMW of North America, LLC*,
687 F.3d 583 (3d Cir. 2012)..................................................15

*Marshall v. Northrop Grumman Corp.*,
469 F. Supp. 3d 942 (C.D. Cal. 2020) ................................7

*Miller v. Ghirardelli Chocolate Co.*,
912 F. Supp. 2d 861 (N.D. Cal. 2012) ...............................15, 16

*National Asbestos Workers Medical Fund v. Phillip Morris, Inc.*,
270 F.3d 984 (2d Cir. 2001)..................................................15

*Nat'l Super Spuds, Inc. v. New York Mercantile Exchange*,
660 F.2d 9 (2d Cir. 1981)......................................................9

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*,
693 F.3d 145 (2d Cir. 2012)..............................................Passim

*Oladapo v. Smart One Energy, LLC*,
2017 WL 5956907 (S.D.N.Y. Nov. 9, 2017) .....................12

*Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*,
775 F.3d 154 (2d Cir. 2014)..............................................Passim

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)................................................12

*Suarez v. California Natl. Living, Inc.*,
2019 WL 1046662 (S.D.N.Y. Mar. 5, 2019) .....................18

*TBK Partners, Ltd. v. W. Union Corp.*,
    675 F.2d 456 (2d Cir. 1982).........................................................6, 10, 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005)......................................................................5

*Williams v. Boeing Co.*,
    517 F.3d 1120 (9th Cir. 2008)................................................................7

*Willner v. Manpower Inc.*,
    2014 WL 4370694 (N.D. Cal. Sept. 3, 2014) .....................................11

**RULES**

Fed. R. Civ. P. 23(f).......................................................................1, 14, 22

**INTRODUCTION**

"[P]etitioners seeking leave to appeal pursuant to Rule 23(f) must demonstrate either (1) that the certification order will effectively terminate the litigation and there has been a substantial showing that the district court's decision is questionable, or (2) that the certification order implicates a legal question about which there is a compelling need for immediate resolution." *In re Sumitomo Copper Litig.*, 262 F.3d 134, 139 (2d Cir. 2001). Defendants have failed to demonstrate that either of these requirements has been met.[1]

<u>First</u>, the District Court correctly determined that the class action settlement approved in *Gay v. Tom's of Maine, Inc*., No. 14-cv-60604 (S.D. Fla. Mar. 11, 2016), ECF No. 43, does not preclude the District Court's class certification order in this matter. Plaintiffs in this action purchased various Tom's of Maine Products with labeling and packaging that was different than the labeling and packaging that was the subject of the settlement in *Gay*. Additionally, the purchases at issue in this action were made well after the class period covered by the *Gay* settlement. Plaintiffs' claims therefore depend on proof of different transactions, during a different time period, and do not involve the identical factual predicate at issue in

---

[1] A court may still grant a Rule 23(f) petition that fails to satisfy either of the foregoing requirements if the petition "presents special circumstances that militate in favor of an immediate appeal," but Defendants fail to raise any such special circumstances in their petition, and none exist here. *Id.* at 140.

*Gay*.

Second, the law is well-settled that named plaintiffs in a putative class action have standing to represent other members of a putative class who have been similarly injured by Defendants' conduct. Here, the conduct at issue is Defendants' false and misleading "natural" statement on Tom's of Maine Products. The false and misleading statement is made uniformly, verbatim across all Tom's of Maine Products – including all toothpaste and deodorant products. While the specific unnatural ingredients may differ between toothpaste and deodorant products, all toothpaste and deodorant products contain synthetic and highly chemically processed ingredients, and are not in fact "natural" as Defendants advertise. First Amended Class Action Complaint at ¶ 23, ECF No. 8 ("Each of the Products contains at least one, and in most instances, several, ingredients that are synthetic or highly chemically processed.")

The "natural" misrepresentation on the toothpaste products implicates the same set of concerns as the "natural" misrepresentation on the deodorant products because (1) Defendants sell both types of products; (2) both types of products contain the exact same misrepresentation; (3) the misrepresentation is false and misleading for the same reasons; and (4) the injuries resulting from the misrepresentation are the same. For these reasons, Plaintiffs have standing to pursue claims on behalf of purchases of both toothpaste and deodorant products

sold by Tom's of Maine during the class period.

## ARGUMENT

## I. EVEN IF DEFENDANTS ARE CORRECT ABOUT THE *GAY* SETTLEMENT'S PRECLUSIVE EFFECT, IT WOULD NOT DISPOSE OF THE DISTRICT COURT'S CLASS CERTIFICATION ORDER

As an initial matter, Defendants assert that the *Gay* settlement entirely precludes the District Court's certification order in this case because (Defendants argue) Plaintiffs are part of, and therefore bound by, the *Gay* settlement. This is incorrect. Defendants' argument completely neglects the fact that *only* Plaintiffs Wright and de Lacour purchased Tom's of Maine products during the class period covered by the *Gay* settlement. There is no concrete evidence to suggest that Plaintiff Moran was a member of *Gay* settlement class, as she testified at her deposition that her first purchase of the products occurred "sometime September 2015 into 2016", which may not have been before September 24, 2015, the time period covered by the class certification order in *Gay*. Moran Dep. at 20:11-12, ECF No. 144-1 at 21.

Moreover, all three plaintiffs continued purchasing the products well after September 23, 2015 (the last day of the *Gay* class period), unaware that any settlement had taken place. Both Plaintiff Wright and Plaintiff de Lacour last purchased Tom's of Maine deodorant in approximately October 2016. *See* Westcot Decl., Ex. 3 ¶ 5; Westcot Decl., Ex. 1 ¶ 5, ECF No. 140. Plaintiff Moran

3

last purchased Tom's of Maine deodorant in June 2016. *See* Westcot Decl., Ex. 2 ¶ 5, ECF No. 140. Accordingly, all the named Plaintiffs purchased the Products (with the new product labeling and packaging) for at least eight months after the class period covered by the *Gay* settlement. The District Court took these facts into consideration when holding that Plaintiffs' claims were not covered by the *Gay* settlement, precisely because they were based on transactions that occurred after September 23, 2015. Op. 17, ECF No. 146.

Thus, even if the Court determines the *Gay* settlement precludes Plaintiff Wright and Plaintiff de Lacour's claims, the *Gay* settlement does not dispose of the District Court's class certification order because (1) Plaintiff Moran did not purchase Tom's of Maine Products within the *Gay* class period, and (2) both Plaintiff Wright and Plaintiff de Lacour made purchases of Tom's of Maine Products well after the *Gay* class period ended and the product labeling and packaging had changed. Defendants have therefore failed to make any showing that the District Court's certification order was "questionable," much less that it "implicates a legal question about which there is a compelling need for immediate resolution." *See Hevesi v. Citigroup Inc*., 366 F.3d 70, 76 (2d. Cir. 2004) (citation omitted). Because Defendants have failed to show that the District Court's class certification order warrants appellate review, the petition should be denied.

4

## II. THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS' CLAIMS ARE NOT BARRED BY THE *GAY* SETTLEMENT BECAUSE THEY ARE NOT BASED ON THE IDENTICAL FACTUAL PREDICATE AT ISSUE IN *GAY*

As discussed above, Defendants argue that Plaintiffs are barred from litigating their claims because they are based on purchases of products covered by the *Gay* settlement. Def. Br. at 14. In doing so, Defendants contend that the District Court too narrowly construed the "identical factual predicate" rule when it expressly found that Plaintiffs' claims, based on modified labeling and packaging, did not depend on the very same set of facts as those in *Gay*. *Id*. at 15. That is wrong. The "identical factual predicate" rule does not apply because Plaintiffs' claims depend on proof of different transactions, during a different time period, and involve distinctive product packaging that was not at issue in the *Gay* action.

"Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005). "Parties often reach broad settlement agreements encompassing claims not presented in the complaint in order to achieve comprehensive settlement of class actions…" *In re Literary Works In Electronic Databases Copyright Litig.*, 654 F.3d 242, 247-48 (2d Cir. 2011). However, "a settlement agreement's bare assertion that a party will not be liable for a broad swath of potential claims does not necessarily make it so." *Hesse v. Sprint Corp.*, 598 F.3d 581, 590 (9th Cir. 2010). "Any released claims not presented directly in

5

the complaint," therefore, "must 'be based on the identical factual predicate as that

underlying the claims in the settled class action.'" *In re Literary Works*, 654 F.3d

at 248 (citing *TBK Partners, Ltd. v. W. Union Corp.,* 675 F.2d 456, 460 (2d Cir.

1982)).

Here, the release in the *Gay* settlement agreement specifically discharged:

> …any and all actions, claims, demands, rights, suits and
> causes of action of whatever kind or nature that <u>could
> reasonably have been, or in the future might reasonably
> be asserted</u> by Plaintiffs or members of the Settlement
> Class either in the Actions or in any action or proceeding
> in this Court or in any other court or forum, against the
> Released Persons, including damages, costs, expenses
> penalties, and attorneys' fees, <u>known or unknown,
> suspected or unsuspected,</u> in law or equity arising out of
> or relating to legal claims made by the Plaintiffs or
> Members of the Settlement Class arising out of or
> relating to the allegations in the Actions or Tom's
> labeling, marketing, advertising, packaging, promotion,
> manufacture, sale and distribution of all Covered
> Products as alleged in the Actions.

Lally Decl., Ex. S at 36, ECF No. 118-19 (emphasis added).  The release goes on

to state that "released claims" include claims "related in any way to 'natural' or

'naturally dry' statements that are contained on the Covered Products[,]" in

addition to "future identical statements about [the] Covered Products[], which have

been asserted or which could reasonably have been asserted by the Releasing

Parties in the Action[.]"  *Id.* at 36-37.

6

Defendants' reading of this release as covering the claims at issue in the instant case is impermissibly overly broad. Although the *Gay* release contemplates encompassing claims that "in the future might be reasonably asserted by Plaintiffs[,]" Lally Decl., Ex. S at 36, ECF No. 118-19, it does not encompass future wrongdoing during a different time period, on the basis of new product packaging put into place after the *Gay* class period ended. Thus, while the parties in *Gay* "may have drafted the settlement agreement to include as broad a release as possible," the release is "enforceable [only] as to subsequent claims … depending upon the same set of facts." *Williams v. Boeing Co.*, 517 F.3d 1120, 1134 (9th Cir. 2008) (citation omitted). *See also In re Lehman Bros. Sec. & ERISA Litig.,* 2012 WL 2478483, at *6 (S.D.N.Y. Jun. 29, 2012) (existence of "some common factual elements" does not mean subsequent claims are barred where those claims "require proof of numerous additional facts"); *In re Digital Music Antitrust Litig.,* 812 F. Supp. 2d 390, 400 (S.D.N.Y. 2011) (same); *Marshall v. Northrop Grumman Corp.*, 469 F. Supp. 3d 942, 950 (C.D. Cal. 2020) (finding proposed settlement agreement impermissibly overbroad because it "include[d] a release of liability that extends beyond the claims based on an identical factual predicate as the claims at issue in the operative complaint."). Accordingly, because Plaintiffs' claims are not based on the very same set of facts set at issue in *Gay*, they are not barred pursuant to the "identical factual predicate" rule.

7

**A.  Plaintiffs' Claims Are Based On Different Product Packaging Than The Packaging At Issue In The *Gay* Settlement**

Defendants argue further that the "claims arising from future, *related* conduct can be released by a broad settlement" like the one in *Gay*.  Def. Br. at 15 (emphasis in original).  That is wrong.  For a settlement release to bar future claims, those claims must "fall[] squarely within the factual predicate underlying [the class's] claims," *i.e.* they must be factually identical.  *In re Literary Works*, 654 F.3d at 248.  Whether a class claim pleaded in a subsequent lawsuit "is predicated on sufficiently similar facts as the class action claim to be barred by a class action settlement release is inherently an individualized, fact-specific [inquiry]."  *In re Credit Default Swaps Antitrust Litig.*, No. 13-MD-2476 (DLC), 2016 WL 2731524, at *15 (S.D.N.Y. Apr. 26, 2016) (citation omitted).  By failing to consider the individualized and distinct factual allegations made in Plaintiffs' Complaint,  Defendants' argument, therefore, misconstrues the identical factual predicate rule as barring Plaintiffs' claims based on their mere "relation" to the claims covered by the *Gay* settlement.

Moreover, although the two sets of claims are superficially similar because they both relate to Defendants' misrepresentations regarding the "natural" nature of Tom's of Maine Products, they involve separate and distinctive questions. Namely, as to the instant case, Plaintiffs do not merely allege that Defendants' "natural" misrepresentation on the Products is false and misleading, but also that

8

language on the modified packaging "directing consumers to the Tom's of Maine webpage for its definition of 'natural'" is insufficient to cure Defendants' labeling misrepresentations. Am. Compl. ¶¶ 21, 22, 30; *see also Hesse*, 598 F.3d at 591 ("[S]uperficial similarity between [] two class actions is insufficient to justify the release of the later claims by the settlement of the former."). Plaintiffs' claims, therefore, are based on a different legal theory that requires proof of additional facts not covered by the *Gay* settlement. *See e.g., Nat'l Super Spuds, Inc. v. New York Mercantile Exchange*, 660 F.2d 9, 18 n.7 (2d Cir. 1981) (denying approval of a settlement agreement because it would "bar [class members] from asserting claims, distinct from those represented by the class action plaintiffs, which depend not only upon a different legal theory but upon proof of further facts.").

Even the *Gay* release implicitly recognizes the identical factual predicate rule by precluding class members in that action from bringing future claims regarding "*identical* statements about the Covered Products[], which have been asserted or which could reasonably have been asserted by the Releasing Parties in the Action[.]" Lally Decl., Ex. S at 37, ECF No. 118-19 (emphasis added). The claims in the instant case are plainly not identical because, again, they involve different packaging and different allegations concerning the nature of Defendants' fraudulent misrepresentations. Moreover, the question of whether Plaintiffs and putative class members were injured by Defendants – "as well as the follow-on

9

questions of when, and where, and how – are also part of the factual predicate of [Plaintiffs] claims made here." *In re Western States Wholesale Natural Gas Antitrust Litig.*, 725 F. App'x 560, 563 (9th Cir. 2018) (citing *Hesse,* 598 F.3d at 589) (holding earlier settlement release was not enforceable to bar later claims "brought to remedy a different set of injuries").  Thus, Plaintiffs are not attempting to relitigate issues that were raised and addressed previously.  *TBK Partners*, 675 F.2d at 460 (noting that courts may permit the release of claims based on the identical factual predicate rule "in order to achieve a comprehensive settlement that would prevent relitigation of settled questions").  Put simply, Plaintiffs could not have reasonably asserted their claims at the time of the *Gay* release because the contested packaging was not in existence at the time of the settlement.[2]

### B.      Plaintiffs' Claims Are Based On Entirely Separate Transactions That Took Place During A Time Period Not Covered By The *Gay* Settlement

Plaintiffs' claims were not even actionable at the time of the *Gay* settlement release because the modified packaging was not yet in existence.  Further, Plaintiffs' claims were also not yet ripe because they had not yet purchased the

---

[2] To the extent Defendants suggest Plaintiffs were *Gay* settlement class members and therefore cannot bring claims challenging the "very same packaging changes" that were part of the *Gay* settlement agreement, Def. Br. at 13, such a claim is unavailing.  Plaintiff Moran was not a *Gay* settlement class member and there is no evidence to demonstrate that she purchased Tom's Products within the *Gay* class period.  *See* Moran Dep. at 20:11-12, ECF No. 144-1 at 21.

Tom's of Maine Products with the modified packaging. Thus, the injuries Plaintiffs seek to redress had not even occurred at the time of the execution of the settlement agreement in *Gay*, and that settlement agreement is not enforceable to bar later claims based on injuries that had not yet occurred and were not included in the scope of the *Gay* allegations. *See Willner v. Manpower Inc.*, 2014 WL 4370694, at *7 (N.D. Cal. Sept. 3, 2014) (a release of claims that "go beyond the scope of the allegations of the operative complaint" is impermissible).

Here, Plaintiffs sought certification of three narrowed classes that include only those individuals who purchased Tom's of Maine toothpaste and/or deodorant products on or after September 24, 2015 in New York, California, and Florida. Purchases made on or after September 24, 2015 were *not* resolved by the settlement in *Gay* because they were not based on the same factual predicate. *See e.g. In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 399 ("In other words, a settlement may be framed to prevent future suits depending on the very same set of facts, … but future claims are barred only where there is a realistic identity of issues between the former and future cases…") (internal citations omitted).

Moreover, even unnamed class members who have been purchasing Tom's Products for many years would be properly included in the class if they purchased a Tom's Product on or after September 24, 2015. This is true even if they happened to purchase a Tom's of Maine Product during the time period covered by

11

the *Gay* settlement.  Every purchase from September 24, 2015 to present therefore resulted in a new injury - an injury that occurred at the time of purchase when the class member paid the price premium.  Purchases that had not yet occurred at the time of the execution of the settlement agreement in *Gay* could not have been properly released by the settlement in that action.  *See e.g. Oladapo v. Smart One Energy, LLC*, 2017 WL 5956907, at 15 (S.D.N.Y. Nov. 9, 2017), *report and recommendation adopted*, 2017 WL 5956770 (S.D.N.Y. Nov. 30, 2017) (rejecting settlement agreement "to the extent that [it] propose[d] to bar all future marketing-related claims by Class Members" as it would "run[] afoul of the identical factual predicate rule and would improperly require Class Members to release claims for which they are not being compensated, arising from facts not alleged in the operative Complaint"), *compare with, Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 749 (9th Cir. 2006) (finding the identical factual predicate rule was satisfied because "the price-fixing predicate ... *and the underlying injury* [we]re identical").

By Defendants' logic, an individual who happened to purchase Tom's Products during the *Gay* class period could never pursue false advertising claims against Defendants  -  even if they later purchased deceptively labeled products with different packaging long after the settlement was approved, perhaps for 5 or 10 years after the initial settlement.  Rule 23 simply does not operate so narrowly

12

at the expense of consumer rights. In fact, if the courts' entire goal were to encourage class action settlements without regard for consumer rights, there would simply be no reason for the "identical factual predicate" limitation at all, and "we would instead allow broad class action settlement releases to bar claims that in any way relate to facts alleged in the class action complaint." *In re Lehman Bros.*, 2012 WL 2478483, at *8. The identical factual predicate doctrine therefore acts as a judicially-imposed limitation on overly broad class settlement releases by declining to permit releases where the claims purportedly released require "proof of further facts." *TBK Partners*, 675 F.2d at 462 (internal quotations marks and citation omitted); *accord. Consol. Edison, Inc. v. Ne. Utils.*, 332 F. Supp. 2d 639, 652 (S.D.N.Y, 2004).

Thus, as is the case here, class action settlements, while they promote finality, cannot serve as a manner of entirely insulating defendants from liability for future, unknown harms that do not involve the identical factual predicate addressed by prior settlement releases. In finding that the *Gay* settlement did not preclude Plaintiffs' distinct claims, the District Court properly applied the identical factual predicate doctrine. Appellate review is therefore not warranted.

**III.   THE DISTRICT COURT CORRECTLY HELD THAT PLAINTIFFS HAVE STANDING TO ASSERT CLAIMS RELATED TO DEFENDANTS' "NATURAL" DEODORANTS AND TOOTHPASTES BECAUSE THEY ARE SUFFICIENTLY SIMILAR**

Defendants argue that the misrepresentations at issue in connection with their toothpaste products do not "implicate[] the same set of concerns" as the misrepresentations at issue with their deodorant products and, therefore, the District Court improperly granted class certification as to "unpurchased products." Def. Br. at 21-22 (internal quotations omitted).  That is wrong.

As an initial matter, Defendants' petition will "result at most in a modification of a certification order" and thus makes it an "unlikely candidate[] for [a] Rule 23(f) appeal."  *See Sumitomo Copper Litig.*, 262 F.3d at 139.  Here, the District Court certified a class of "[a]ll persons who purchased Tom's of Maine deodorant and/or toothpaste products" in New York, California, and Florida.  Op. 33.  Even if Defendants' arguments are valid (they are not), it would only narrow the class to deodorant purchasers.  *See Sumitomo Copper Litig.*, 262 F.3d at 143 (declining to exercise interlocutory review because it "arguably would not alter the district court's grant of certification with respect to the common-law fraud claim").  A Rule 23(f) appeal is even further ill-fitting because class standing for unpurchased products is not a "novel legal question," nor is it "likely to escape effective review after entry of final judgment."  *See id.* at 140.  Indeed, Defendants cite a number of decisions by this Court that define the scope of class standing,

14

none of which was decided prior to an entry of final judgment. *See Ret. Bd. of the Policemen's Annuity & Ben. Fund of the City of Chicago v. Bank of New York Mellon*, 775 F.3d 154, 157 (2d Cir. 2014) (on appeal from a dismissal order); *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 156 (2d Cir. 2012) (same); *DiMuro v. Clinique Laboratories, LLC*, 572 Fed. Appx. 27, 29 (2d Cir. 2014) (same). On these grounds alone, "petitioners have failed to satisfy the standard enunciated in *Sumitomo Copper Litigation* …." *See National Asbestos Workers Medical Fund v. Phillip Morris, Inc.*, 270 F.3d 984, 984 (2d Cir. 2001).

"[I]n a putative class action, a plaintiff has class standing if he plausibly alleges (1) that he personally has suffered some actual injury as a result of the putatively illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Retirement Bd. of the Policemen's Annuity*, 775 F.3d at 161 (quoting *NECA*, 693 F.3d at 162).[3] The

---

[3] Defendants argue this Court's "expansive" standard "conflicts with the rules" of sister circuits. Def. Br. at 18. That is incorrect. *See, e.g.*, *Marcus v. BMW of North America, LLC*, 687 F.3d 584, 599 (3d Cir. 2012) ("When a class includes purchasers of a variety of different products, a named plaintiff that purchases only one type of product satisfies the typicality requirement if the alleged misrepresentations or omissions apply uniformly across the different product types."); *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 869 (N.D. Cal. 2012) ("The majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members

second prong is satisfied where the claims of absent members are "similar to those of the named plaintiff in all essential respects" and where "the proof contemplated for all of the claims would be sufficiently similar." *See id*. As it particularly relates to the present case:

> [I]n the context of claims alleging injury based on misrepresentations, the misconduct alleged will almost always be the same: the making of a false or misleading statement. Whether that conduct implicates the same set of concerns for distinct sets of plaintiffs, however, will depend on the nature and content of the specific misrepresentations alleged.

*NECA*, 693 F.3d at 162. Ultimately, "[t]he core question is whether a plaintiff who has a personal stake in proving her own claims against the defendant has a sufficiently personal and concrete stake in proving other, related claims against the defendant." *Retirement Bd. of the Policemen's Annuity*, 775 F.3d at 163.

Defendants manufacture and sell "17 varieties of deodorant, such as 'Unscented' or 'Tea Tree,' and 34 flavors of toothpaste, such as 'Cinnamon Clove' and 'Mild Mint.'" *See* Op. 2. "The labelling for each of these products contains the representation that they are 'natural.'" *Id.*; *see also* Murphy Dep. at 58.20-60.4, 65:10-13, Westcot Decl. Ex. 2, ECF No. 110-2 at 4, 7. "Plaintiffs' central contention is that Tom's of Maine's products are not, in fact, 'natural.'" Op. 3.

---

based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar.").

Instead, "[t]he toothpaste and deodorant products at issue contain allegedly synthetic, artificial, and chemically processed ingredients, including, *but not limited to*, sodium lauryl sulfate ('SLS') and propylene glycol." *Id.* (internal quotations omitted) (emphasis added); *see also* Product List, Westcot Decl. Ex. 1, ECF No. 110-1 at 2-4. "As a result, Plaintiffs argue, Tom's of Maine's 'natural' labelling is false and misleading and led Plaintiffs to purchase the company's products at a 'price premium.'" Op. 3.

The first prong is easily, and undisputedly, satisfied. Def. Br. at 20 (contesting only whether "the challenged conduct implicates the same set of concerns …."); *see also* Op. 8 ("The first requirement of this test is satisfied here because Plaintiffs have alleged that they each suffered an actual injury as a result of Tom's of Maine's labelling of its deodorant.").

The second prong is also easily satisfied. Defendants' misrepresentations for their deodorants "implicate[] the same set of concerns" as Defendants' misrepresentations for their toothpastes because "the nature and content of the specific misrepresentations" is the same for both. *See NECA*, 693 F.3d at 162; *see also Holve v. McCormick & Company, Inc.*, 334 F. Supp. 3d 535, 551 (W.D.N.Y. 2018). The "content" is identical; both products claim they are "natural." Op. 2. The "nature" of the misrepresentations is the same because Defendants sell both products, and—contrary to their "natural" labelling—both products contain

"allegedly synthetic, artificial, and chemically processed ingredients …." *Id.* at 3 (internal quotations omitted); *see also Suarez v. California Natl. Living, Inc.*, 2019 WL 1046662, at *5 (S.D.N.Y. Mar. 5, 2019). The harm that flows from Defendants' conduct is also the same, having "led Plaintiffs to purchase the company's product at a 'price premium.'" *See* Op. 3. Put together, Plaintiffs' claims are "similar … in all essential respects," with "the proof contemplated" for both products "sufficiently similar." *See Retirement Bd. of Policemen's Annuity*, 775 F.3d at 161. Plaintiffs thus possess a "sufficiently personal and concrete stake" and have plainly established class standing for toothpaste purchasers. *See id.* at 163.

*NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012) is instructive. There, the plaintiff alleged that an "Offering Document contained false and misleading information about the underwriting guidelines of the mortgage loan originators, the property appraisals of the loans backing the Trusts, and the risks associated with the Certificates." *Id.* at 151. The Court upheld class standing because, as the Court explained in a subsequent decision, "the stated underwriting guidelines for each originator were essentially the same across all of the offering documents, proving that those guidelines were materially misleading as to loans held by one trust would tend to prove that those

same guidelines were similarly misleading as to loans held by other trusts."
*Retirement Bd. of the Policemen's Annuity*, 775 F.3d 161-162.

Here, like the underwriting guidelines in *NECA*, Defendants misleadingly label both their deodorants and toothpastes as "natural," and here, like in *NECA*, proving that "natural" is false and misleading as to one product will "tend to prove" the same for the other product. Thus, far from being "questionable," and even further from being "manifestly incorrect," the District Court's holding fully comports with this Court's reasoning and holding in *NECA*, 693 F.3d at 145.

Defendants' reliance on *DiMuro* is unavailing. 572 Fed. Appx. at 29 (unpublished). In *DiMuro*, there were "seven different products" containing "different ingredients" and "different advertising claims for each product." *Id.* at 29. The Court found that the purchased products did not raise the same "set of concerns" as to the unpurchased products because "[e]ntirely unique evidence will … be required to prove that the *35-some advertising statements* for each of the seven different Repairwear products are false and misleading." *DiMuro*, 572 Fed. Appx. at *29. (emphasis added). Here, by contrast, there is only one advertising statement at issue—that Defendants' products are "natural." Op. 2. There is also overlap between the "allegedly synthetic, artificial, and chemically produced ingredients" in both products. Product List, Westcot Decl. Ex. 1, ECF No. 110-1 at 2-4 (both toothpastes and deodorants contain the artificial ingredient glycerin).

Even if there were no overlap, Plaintiffs' complaint alleges the products "contain at least one, and in most instances, several ingredients that are synthetic or chemically processed." Op. 3, n. 1. Proving one product contains ingredients that are "synthetic, artificial, and chemically produced" will "tend to prove" the other product does so too. *See Retirement Bd. of the Policemen's Annuity*, 775 F.3d at 161-62. Thus, by attempting to rewrite Plaintiffs' complaint and parse between ingredients, Defendants recycle the same mistake that the District Court rejected, that other district courts have rejected, and that this Court should reject too. *See* Op. 3, n.1 ("Defendants argue that the renewed motion for class certification is limited to these two specific ingredients. That is incorrect …."); *see also Holve*, 334 F. Supp. 3d at 551 (holding that, despite defendant's argument that "the Products all have different labels and ingredients," the purchased product was still "similar with respect to the unpurchased products" and "implicates the same set of concerns as the purported class").

Defendants also argue that "[t]he question whether the purchaser of one product can represent purchasers of different products is, in this Circuit, unsettled." Def. Br. at 20. That is wrong.

To be sure, district courts, including this District Court, have opined that there is a "split as to whether plaintiffs have standing to assert claims relating to products they themselves did not purchase, but which are substantially similar to

products they did purchase." *See Brady v. Basic Research*, *LLC*, 101 F. Supp. 3d 217, 228 (E.D.N.Y. 2015); *see also* Op. 9.  This "split," however, is more form than substance.  Decisions by district courts in this circuit have been remarkably consistent with what factual circumstances will confer class standing for unpurchased product.  *See Daniel v. Tootsie Roll Industries LLC*, 2018 WL 3650015, at *5 (S.D.N.Y. May 6, 2020) ("[C]ourts in this Circuit have held that . . . a named plaintiff has standing to bring class action claims . . . for products he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff did purchase."); *compare Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 559-63 (S.D.N.Y. 2016) (holding plaintiff possessed class standing for thirty-nine unpurchased products mislabeled as "'natural,' 'all natural,' 'naturally derived,' 'plant-based,' and/or containing 'no harsh chemicals ever!'" despite that "the unpurchased products may contain different ingredients compared to the purchased products") *with Hart v. BHH, LLC*, 2016 WL 2642228, at *4 (S.D.N.Y. May 5, 2016) (finding no class standing for purchasers of Animal Repellers where the purchased product, Pest Repellers, "are plugged into electric sockets and are advertised only to repel insects and mice" and Animal Repellers are "solar-powered devices mounted in gardens to repels animals").

21

But again, even if there were a court split, a Rule 23(f) appeal is inappropriate.  At most, it would result "in a modification of a certification order," and this legal question is neither "novel" nor is it "likely to escape effective review after entry of final judgment."  *See Sumitomo Copper Litig.*, 262 F.3d at 140.

## CONCLUSION

For the foregoing reasons, this Court should not permit an interlocutory appeal of the District Court's April 23, 2021 order granting in part and denying in part Plaintiffs' motion for class certification.

Dated:  May 17, 2021                              Respectfully submitted,

                                                  By:    */s/ Frederick J. Klorczyk III*

                                                  Frederick J. Klorczyk III
                                                  **BURSOR & FISHER, P.A.**
                                                  888 Seventh Avenue
                                                  New York, NY 10019
                                                  Telephone: (646) 837-7150
                                                  Facsimile:  (212) 989-9163

                                                  *Attorneys for Plaintiffs-Respondents*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the word limit of Fed. R. App. P. 5(c)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains **5,199 words**.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in 14-point Times New Roman font.

Dated:  May 17, 2021

Respectfully submitted,

By:    */s/ Frederick J. Klorczyk III*
      Frederick J. Klorczyk III